**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BARRY COHEN, | : : : |
| Plaintiff, | : Civil Action No.: 19-5604 (FLW) : |
| vs. | : **OPINION** : : |
| JEFF J. HORN and THE HORN LAW GROUP, LLC, | : : : |
| Defendants. | : : |

**WOLFSON, Chief Judge:**

*Pro se* plaintiff Barry Cohen ("Plaintiff" or "Cohen"), asserts legal malpractice claims against his former attorney, Jeff J. Horn, Esq., and the Jeff Horn Law Group, LLC (collectively, "Defendants"), as a result of their alleged negligent representation in connection with Plaintiff's attempt to challenge his late father's will. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL HISTORY**

**A.  The Underlying Estate Action**

The following facts are undisputed unless otherwise noted.[1] On October 27, 1999, Plaintiff's father, Harry Cohen, executed a last will and testament (the "1999 Will"), which had

---

[1] Plaintiff disputes many of the factual contentions detailed in Defendants' Statement of Material Fact ("SOMF") and objects to the related exhibits, arguing that the documents were not provided to Plaintiff in the underlying legal matter, either prior to or immediately following Defendants' withdrawal of their representation. *See e.g.*, Pl. Resp. SOMF ¶62 ("Disputed. this is one of the many documents that Defendants refused to provide to Plaintiff prior to Defendant's

been drafted by Robert H. Taff, Esq. Def SOMF ¶¶1-2. Among other things, the 1999 Will provided that upon Harry Cohen's death, any funds remaining after the payment of his debts and funeral expenses and other reductions, should be placed in a trust for his wife, Selma Cohen. ECF No. 19, Def. SOMF ¶4; ECF No. 17-2, Pl. Resp. SOMF ¶4; *see also* ECF No 17-2, Certification of Jeffrey Leonard, Esq. ("Leonard Cert.") Ex. D, 1999 Will. The 1999 Will further instructed that Plaintiff and his sister, Helane, were to be named co-trustees of the trust, and upon Selma's death, they were to receive $200,000. *See* Ex. D. If either Helane or Plaintiff predeceased their father, then their share of trust was to be distributed to their surviving children. *Id.* In 2011, Plaintiff's father passed away, and Plaintiff's mother, Selma, probated the 1999 Will. *Id.* ¶29-33.

In 2016, several years following his father's death, Plaintiff contacted Mr. Taff and informed him that he had only just received a copy of his father's probated will, and that he did not believe his mother was complying with the document's terms. Leonard Cert, Ex. K. Mr. Taff responded and informed Plaintiff that he "was not involved in the Administration of [Plaintiff's] Father's Estate" and "was not the attorney who submitted the Will to [c]ourt." Leonard Cert., Ex. L. Mr. Taff further reported that based on his "cursory investigation," it appeared that Plaintiff's mother, Selma, may have submitted the will to probate herself. *Id.*

In May 2016, Plaintiff retained Mr. Horn and his law firm to represent him in a lawsuit regarding the administration of his father's Estate. Def. SOMF ¶40; Pl. SOMF ¶40. In June 2016,

---

withdrawal as attorney."). Although on a motion for summary judgement a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56, here, however, Plaintiff's objection is not based on the rules of evidence. Regardless of whether the challenged documents were ever sought during the underlying litigation, the evidence which Plaintiff challenges was plainly provided during discovery in this action. Plaintiff has not made any arguments, based on the rules of evidence, that would preclude the subject documents' admissibility.

Mr. Horn filed an order to show cause and complaint in New Jersey state court, alleging, *inter alia*, that Selma Cohen failed to abide by the terms of the 1999 Will and also failed to appropriately account for the Estate's assets. Def. SOMF ¶¶45-46. In response, Selma's counsel informed Plaintiff and Mr. Horn that Plaintiff's father executed a new will in 2009 (the "2009 Will"), which left everything solely to Selma, and accordingly, counsel requested that Plaintiff withdraw his complaint. Def. SOMF ¶51. Plaintiff declined to do so, and Selma's counsel filed an answer and counterclaim seeking to probate the allegedly newly discovered 2009 Will. *Id*. at ¶¶51, 53. Mr. Horn filed a response to the counterclaim, and included a certification from Plaintiff, which asserted, *inter alia*, that Plaintiff's father "suffered significant age-related mental issues, including interactions with the police and an open Adult Protective Services file" at the time the 2009 Will was executed, and thus, sought to challenge the 2009 Will based on lack of testamentary capacity. *Id*. at ¶¶54-55; Leonard Cert, Ex. R.

The parties largely disagree regarding the proposed legal strategy from that point onward. According to Mr. Horn, "the game plan" for the litigation was to "file an answer to the counterclaim, create . . . the impression that Plaintiff was willing to 'go the distance' and then settle the matter . . . and collect the maximum amount of reimbursement to Plaintiff." Def. SOMF ¶59. Indeed, on August 29, 2016, Mr. Horn sent a letter to Plaintiff and his wife purporting to "[c]onfirm[] our game plan," which reads:

> 1. Answer Counterclaim and respond to certification as set forth in Selma's pleadings.
> 2. Communicate with counsel for Selma to determine the depth of her knowledge about the circumstances of Harry's interaction with Adult Protective Services, Selma's interaction with the Manchester Police and Harry's capacity to execute an updated Will, leave counsel with the impression you are willing to go the distance.

    3. Settle matter conceding the admission of the January 2, 2009 Will superseding the 1999 Will and collecting maximum reimbursement for your legal fees expended to date.
    4. You have expended $3,500 thus far. I budget the Answer to counterclaim and these negotiations without conducting any discovery or appearing in Court to around $15000. This is of course an estimate[.]

Leonard Cert., Ex. S. However, Plaintiff – without citing to the record -- disputes Defendant's characterization of the litigation strategy and contends that "[t]he game plan was to subpoena the Ocean County Senior Services file . . . to contest the validity of the 2009 Will, to obtain the financial records at the time of [his] father's death, and then to re-evaluate the position." Pl. Resp. SOMF ¶59.

    Discovery produced during the underlying litigation matter, revealed that on November 1, 2007, Mr. Taff, the attorney who prepared the 1999 Will, drafted a memo (the "Taff Memo") to his file purportedly documenting a meeting with Harry and Selma Cohen on October 31, 2007. Def. SOMF ¶9; *see also* Leonard Cert, Ex E. According to the Taff Memo, Plaintiff's parents were concerned that their son was "very distant, both geographically and emotionally from them" and Mr. Taff advised reconsidering their choice in trustee. Leonard Cert, Ex E. According to the memo, the Cohens indicated that they would follow up with Mr. Taff "in about a week." *Id*. Ultimately, however, it appears that Mr. Taff did not draft new wills or any documents for Harry and Selma, and the alleged 2009 Will was drafted by a different attorney.

    Discovery also revealed the existence of a document, dated November 13, 2008, titled the "New Jersey Ease Comprehensive Assessment Tool" ("the Comprehensive Assessment"), which was included in Ocean County Senior Services' file, that revealed that Harry Cohen reportedly suffered from dementia. *See* Leonard Supp. Cert., Ex. 1.

    In September 2016, the state court judge in the estate dispute issued a case management order which set various discovery deadlines between October 2016 and March 2017. Def. SOMF

¶62. Among other things, the order set a December 15, 2016 deadline for fact discovery depositions. *Id*. A few weeks later, Mr. Horn spoke to Plaintiff and his wife, and Plaintiff directed Mr. Horn to obtain an accounting of his father's estate. Def. SOMF ¶¶62-63. Plaintiff and Mr. Horn also agreed that Mr. Horn would issue a subpoena to Adult Protective Social Services in order to obtain information which would support the assertion that Plaintiff's father lacked testamentary capacity at the time the 2009 Will was allegedly executed. *Id*. ¶¶63-64. On December 2, 2016, Mr. Horn issued a subpoena to Virginia Muscarella from Senior Services of Manchester Township, which, on December 23, 2016, Selma's counsel moved to quash. *Id*. at ¶¶65, 66. On December 29, 2016, Mr. Horn wrote to Plaintiff informing him, *inter alia*, that the anticipated budget to oppose the motion to quash would be between $1,000 and $2,000, and asking Plaintiff to confirm he wanted to proceed with the opposition. Leonard Cert., Ex. X. Mr. Horn also informed Plaintiff that, at that point, "$6,500 ha[d] been billed and paid" and "[a]ssuming continued resistance from Selma's side of the litigation, the prospect of the matter costing an additional $5,000 to $10,000 before [t]rial exits." *Id*. Mr. Horn also expressed doubt "that pressing on with the litigation will produce a financial recovery that justifies the expenditure," and requested Plaintiff's insight. *Id*.

On January 7, 2017, Mr. Horn sent another letter to Plaintiff asserting that, "[i]t is extremely clear to me that we are not on the same page as it relates to this litigation. By way of example and not limitation, your focus on ordering me to go [to] the [c]ourthouse to inspect the Court's file to confirm that the 2009 Will is an original and conducting parallel discovery is incongruent with the attorney-client relationship." Leonard Cert, Ex. Y. Further, Mr. Horn enclosed a copy of the September 7, 2016 case management order and requested that Plaintiff execute a substitution of attorney form. *Id*. The letter further indicated that if Plaintiff did not

execute the form, then Mr. Horn would file a motion to be relieved as counsel. *Id*. Plaintiff disputes "the intent of the correspondence" and asserts that the letter was sent after a telephone conversation during which Mr. Horn admitted that 1) he "had not verified the authenticity of the 2009 Will despite having agreed to";  2) Mr. Horn unilaterally agreed, without Plaintiff's knowledge or consent, to allow the defendants additional time to respond to outstanding discovery requests and reschedule Ms. Muscarela's deposition; 3) Mr. Horn did not intend to respond to the motion to quash and had no intention of filing a motion to extend the discovery deadlines outlined in the case management order. Pl. SOMF. ¶69.  Its unclear how, if at all, Plaintiff responded to Mr. Horn's letter, however, on January 17, 2017, Mr. Horn filed a motion seeking to withdraw as counsel, which was granted on February 6, 2016. Def. SOMF ¶¶72, 74.  On January 18, 2017, the day after Mr. Horn filed his motion to withdraw as counsel, he also provided Plaintiff with a copy of his file. Pl. SOMF. ¶2.  Subsequently, on January 27, 2017, Mr. Horn informed Plaintiff that the motion to relieve and the motions to quash were all scheduled for February 6, 2017., and that Plaintiff had three options as to how to proceed:  1) sign the substitution of attorney, takeover representation and file the responsive pleadings, 2) have superseding counsel sign a substitution of attorney, or 3) do nothing and allow the motions to proceed unopposed.  Leonard Cert., Ex. AA..  Finally, Mr. Horn informed Plaintiff that responsive pleadings are typically due a minimum of eight days prior to the motion hearing and must be delivered to the court and all parties. *Id*.

     Several months after Mr. Horn was relieved as counsel, on May 4, 2017, the state court judge entered an order finding that "decedent Harry Cohen specifically intended to revoke [the 1999 Will]."[2]  Leonard Cert., Ex. CC.  Accordingly, the court vacated the order probating  the

---

[2] The order indicates that the reasons for the Court's decision were provided on the record on May 2, 2017. *See* Leonard Cert., Ex. CC.  Neither party has provided a copy of the court transcript from that proceeding.

6

1999 will, admitted the 2009 Will to probate, and granted Selma's attorney an award of attorney's fees to be paid from the decedent's estate. *Id*.

### B. The Instant Malpractice Suit

On January 29, 2019, Plaintiff filed a legal malpractice action against Defendants in New Jersey state court. Defendants subsequently removed the matter to this Court, based on the existence of diversity jurisdiction. Defendants now move for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the

7

burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. ANALYSIS

"Legal malpractice is a variation on the tort of negligence." *Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 845 A.2d 602, 611 (N.J. 2004). "Like most professionals, lawyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence .... 'What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform.' " *Ziegelheim v. Apollo*, 607 A.2d 1298, 1303 (N.J. 1992) (quoting *St. Pius X House of Retreats v. Diocese of Camden*, 443 A.2d 1052, 1053 (N.J. 1982)). Under New Jersey law, a plaintiff must establish a prima facie case of legal malpractice in order to survive a motion for summary judgment. *See Jerista v. Murray*, 883 A.2d 350, 359 (N.J. 2005). To prove legal malpractice, a plaintiff must produce sufficient evidence showing (1) the existence of an attorney-client relationship imposing a duty of care on the attorney; (2) a breach of the attorney's duty; (3) proximate causation; and (4) resulting damages. *See McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001). In order to find proximate cause, the attorney's the negligent conduct must be a "substantial factor" in bringing about the injuries. *Komlodi v. Picciano*, 89 A.3d 1234, 1254 (N.J. 2014) (internal quotation marks removed).

Here, there is no dispute with respect to the first element, as Plaintiff unquestionably retained Defendants to perform legal services on his behalf. However, Plaintiff has failed to establish a prima facie case with respect to any of the remaining elements of a legal malpractice claim.

As an initial matter, it does not appear that Plaintiff has adequately shown that Defendants breached a duty to him.[3] In that regard, Plaintiff argues that Defendants breached their duties to

---

[3] While Defendants do not expressly concede this element, their briefing focuses solely on the "case within a case" requirement and proximate cause.

9

him by failing to "honor the dates he agreed to in the Scheduling Order" and failing to provide the promised services. ECF No. 18, Pl. Opp Br. at 4. Specifically, Plaintiff asserts that Defendants failed to 1) honor the dates in the scheduling order; 2) file a motion to compel discovery; 3) file a motion to extend the discovery deadlines; 3) assess the authenticity of the 2009 Will; 4) respond to the motion to quash; and 5) subpoena records from Ocean County Senior Services. *Id*. Plaintiff further contends that if "Defendants had obtained the Ocean County Senior Services file as promised, it would have revealed that the [d]ecedent was diagnosed with dementia prior to execution of the 2009 Will, that [the decedent's] mental condition had been deteriorating since 2008." *Id*. at 6. Similarly, Plaintiff argues that if Defendants had "examined the 2009 Will or further questioned its author, the authenticity would have been questioned and it would not have been entered." *Id*.

In order to satisfy his or her obligation to a client, among other things, an "attorney must act with 'reasonable diligence and promptness,' and with a degree of skill and competence that comports with reasonable professional standards." *Estate of Spencer v. Gavin*, , 946 A.2d 1051, 1064 (N.J. App. Div. 2008) (quoting New Jersey R. Professional Conduct 1.3). First, with respect to Mr. Horn's alleged failure to oppose the motion to quash, on December 29, 2016, six days after the motion was filed, Mr. Horn emailed Plaintiff to inform him, *inter alia*, that the anticipated budget to oppose the motion to quash would be between $1000 and $2000 and to confirm whether Plaintiff wanted Mr. Horn to proceed with the opposition.[4] Def. SOMF ¶ 67. Plaintiff has not proffered any evidence which suggests that Plaintiff responded and requested that Mr. Horn

---

[4] In his SOMF, Plaintiff asserts that although Mr. Horn informed him of the motion to quash on December 29, 2016, Mr. Horn "did not forward the actual pleadings until January 5, 2017." Pl. SOMF ¶67. However, even if true, the failure to forward the motion to quash to Plaintiff does not, alone, constitute a breach of Defendants' duties to Plaintiff.

oppose the motion. Indeed, the record lacks any evidence regarding Plaintiff and Mr. Horn's communications between December 29, 2016 and January 9, 2017, when Mr. Horn sought to terminate the attorney-client relationship. Further, on January 27, 2017, Mr. Horn informed Plaintiff, via email, that the court had scheduled both the motion to be relieved as counsel and the motion to quash for February 6, 2017, and that if Plaintiff did not hire new counsel or file a *pro se* response, the motions would be unopposed. Leonard Cert., Ex. CC. Accordingly, Plaintiff has not satisfied his burden of demonstrating that Mr. Horn breached a legal obligation regarding the motion to quash. Similarly, although Plaintiff asserts that Mr. Horn failed to diligently pursue discovery by unliterally agreeing to postpone the Virginia Muscarella deposition from December 15, 2016 to December 26, 2016, a date after the deadline for depositions pursuant to the court's scheduling order, Mr. Horn did not breach a duty to his client in that regard, either. In light of the pending motion to quash, the deposition was unable to proceed on the date for which it had been noticed, and thus, Mr. Horn was plainly obliged to postpone.

With respect to the remainder of Plaintiff's assertions, the record indicates that several months into the attorney-client relationship, Plaintiff and Mr. Horn disagreed regarding the legal strategy for the remainder of the litigation. Then, on January 9, 2017, once it was clear that they were plainly unable to agree on a litigation strategy, Mr. Horn allowed Plaintiff time to retain a new attorney and file a notice of substitution. Def. SOMF ¶ 71; Leonard Cert, Ex. Y. When Plaintiff failed to do so, on January 17, 2017, Mr. Horn filed a motion to withdraw his representation, consistent with his obligations under the rules of professional conduct, and was relieved on February 6, 2016. Def. SOMF ¶¶ 72, 74. Thus, to the extent Plaintiff argues that Mr. Horn breached his duty by failing to adhere to Plaintiff's imposition of certain discovery dates and issuing certain subpoenas, it is far from clear that Defendants violated any obligations imposed by

11

the rules of professional responsibility or any other attorney-client duties.  However, even assuming Defendants breached their duties to Plaintiff, Plaintiff has not established proximate cause or damages.

To prove causation in a legal malpractice action, a plaintiff must demonstrate that the attorney's negligent conduct was a substantial factor in contributing to the plaintiff's harm.  *See Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 310 (D.N.J. 2012); *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071–72 (N.J. 1996). The substantial factor test is satisfied where the plaintiff can show that the attorney's breach was "not a remote, trivial or inconsequential cause" of the plaintiff's damages.  *Komlodi*, 89 A.3d at 1255  (citation omitted). Plaintiff's "burden must be sustained by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'"  *2175 Lemoine Ave. Corp. v. Finco, Inc*., 640 A.2d 346, 352 (N.J. App. Div. 1994) (quoting *Long v. Landy*, 35 N.J. 44, 54, 171 A.2d 1, 6 (N.J. 1961))).  Under New Jersey law, "[t]he most common way to prove the harm inflicted by [legal] malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." *Garcia*, 845 A.2d at 611 "The 'suit within a suit' approach aims to clarify what would have taken place but for the attorney's malpractice." *Id*.  Thus, to prove damages resulting from Defendants' alleged negligence, Plaintiff must show that he would have prevailed in the underlying action challenging the administration of his father's estate and invalidating the 2009 Will.  Clearly, he has not done so.

Defendants argue that Plaintiff cannot establish proximate cause, because he has not produced any evidence demonstrating that his father lacked testamentary capacity at the time the 2009 Will was allegedly executed. ECF No. 17-19, Def Br. at 6.  Thus, according to Defendants, "Plaintiff is unable to show that he would have succeeded in the underlying litigation of having

12

the 2009 Will rejected for probate." *Id*. Defendants further argue that the only admissible only piece of evidence in support of Plaintiff's claims is Plaintiff's own certification in the underlying legal matter, and that certification fails to establish lack of testamentary capacity. In addition, Defendants further explain that the only other evidence potentially suggesting dementia are the Ocean County Senior Services Records, which are hearsay and inadmissible on this motion. Def. Reply Br. at 5.

In response, Plaintiff argues that records received from Ocean County Senior Services indicate that his father "was diagnosed with dementia prior to the execution of the 2009 Will, that the mental condition has been deteriorating since 2008." Pl. Br. at. 6. Furthermore, Plaintiff asserts that the documents produced by Mr. Taff do not indicate that his father and mother decided to proceed with the changes to the will. *Id*.

I note that Mr. Horn was relieved as counsel in February 2017, and the state court did not enter its order disposing of the action until May 2017. The record is devoid of evidence regarding what occurred in the intervening months. It is unclear whether Plaintiff ever attempted to obtain counsel, or attempted to procure the documents which he asserts would have been critical to succeeding in the underlying action. At the time of his withdrawal, Mr. Horn outlined the outstanding motions, and Plaintiff was well aware that responses to those motions had not yet been filed, and that the discovery Plaintiff desired had not been sought. Plaintiff had ample time to retain new counsel to pursue discovery and file the responsive briefings or file them *pro se*. Thus, it is not clear that Mr. Horn's actions were a substantial factor in Plaintiff's loss. *See Mahoney v. McDonnell*, No. 12-6875, 2014 WL 11429021, at *5 (D.N.J. Sept. 16, 2014), *aff'd,* 616 F. App'x 500 (3d Cir. 2015) (granting summary judgment in favor of defendant because even though defendant breached his duty to timely file plaintiff's appeal, plaintiff took over her own

representation after counsel withdrew and during that time "[p]laintiff failed to perfect the appeal, seek further extensions, or retain new counsel prior to the March 30 filing deadline," and "took no further actions to reopen her appeal. As such, no reasonable jury could find that [defendant's] failure to prefect the appeal was the proximate cause of her damages").

More importantly, Plaintiff has not demonstrated that even if Mr. Horn had performed the requested actions, the underlying lawsuit would have resulted in a favorable recovery for Plaintiff, because he has not produced evidence sufficient to create a factual question regarding his father's testamentary capacity, or the validity of the 2009 Will.[5]

Only two pieces of evidence in the record suggest that Plaintiff's father, Harry Cohen, may have suffered from cognitive issues potentially impacting the validity of the 2009 Will. The first is Plaintiff's certification from the underlying estate matter, in which Plaintiff asserted that his father suffered from "significant age-related mental issues." Leonard Cert, Ex. R. The second is the records from Ocean County Senior Services, which indicate that Harry Cohen had been diagnosed with dementia.. Pl. Br. at 6; *see also* Leonard Supp. Cert. Ex. 1. However, those records are inadmissible. The specific document on which Plaintiff relies was purportedly received and completed by a "screener," Patie Wesch, on November 13, 2008, based on information obtained from Helane, Plaintiff's deceased sister. *Id*. The Assessment is an of court statement, and therefore hearsay, which cannot be considered for the truth of the matter asserted therein. Fed. R. Evid. 801(c)). Even if Plaintiff chose to call Ms. Wesh, whom he seemingly has not deposed, at trial to testify, it does not appear that she had any direct contact with Plaintiff's father such that she could testify regarding any personal knowledge or recollection about Harry Cohen's condition.

---

[5] Throughout his briefing, Plaintiff indirectly suggests that his father's signature on the alleged 2009 Will may have been a forgery, however, he has not produced any evidence in that regard.

14

Although "'hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial,'" Plaintiff has not offered any evidentiary arguments in support of their admission, nor does this Court's independent review suggest an applicable exception or exemption to the hearsay rules applies. *McMillian v. Wetzel*, 790 F. App'x 455, 459 (3d Cir. 2019) (quoting *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)); *see also* Fed. R. Civ. P. 56(c)(2), Advisory Committee Note (explaining that if evidence is objected to on a summary judgement motion, the proponent of evidence must "show that the material is admissible as presented or to explain the admissible form that is anticipated."). Accordingly, the Court cannot – and does not consider -- the Comprehensive Assessment on this motion.

Moreover, even if Plaintiff's father did, indeed, suffer from dementia, that would not definitively establish that he lacked testamentary capacity. Rather, "[t]he gauge of testamentary capacity is 'whether the testator can comprehend the property he is about to dispose of; the natural objects of his bounty; the meaning of the business in which he is engaged; the relation of each of the factors to the others, and the distribution that is made by the will.'" *Matter of Will of Liebl*, 617 A.2d 266, 268 (N.J. App. Div. 1992) (quoting *In re Livingston's Will*, 73 A.2d 916, 920 (N.J. 1950)). "As a general principle, the law requires only a very low degree of mental capacity for one executing a will." *Id.* (internal citations omitted). Numerous courts have upheld the validity of wills executed by individuals suffering from dementia. *See e.g., Matter of Estate of Finocchiaro,* No. A-4532-14T1, 2017 WL 5898592, at *7 (N.J. App. Div. Nov. 30, 2017) (recognizing that "a person who may at times lack testamentary capacity may be deemed capable of executing an enforceable will if they have 'lucid intervals.'"); *In re Estate of Murphy*, No. A-4356-11T3, 2013 WL 1337777, at *4 (N.J. App. Div. Apr. 4, 2013) (affirming trial court's finding

that deceased possessed the testamentary capacity to execute a will, despite suffering from dementia); *In re Estate of Riordan*, No. A-4123-09T4, 2011 WL 2416870, at *7 (N.J. App. Div. June 17, 2011) (same).

At this phase of the litigation, the only admissible evidence which casts doubt on Harry Cohen's testamentary capacity is Plaintiff's own assertion that his father's mental state was failing. But as explained above, failing mental state does not equate to a lack of testamentary capacity. Accordingly, Plaintiff's conclusory statement that his father lacked testamentary capacity is insufficient to establish that Plaintiff could have succeeded in the underlying estate matter. *See Celotex Corp.*, 477 U.S. at 324 (explaining the need for specific facts to show a genuine issue for trial). Aside from his own self-serving statements, Plaintiff has not offered any admissible evidence indicating that his father lacked testamentary capacity, and absent such evidence there is no basis to conclude that Plaintiff could have succeeded in the underlying legal matter that Defendants were hired to litigate. Accordingly, Defendants' motion for summary judgement on Plaintiff's legal malpractice claims is granted.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

Date:  January 6, 2020

<u>/s/ Freda L. Wolfson</u><br>
Hon. Freda L. Wolfson<br>
U.S. Chief District Judge