**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY COHEN,<br><br>   Plaintiff,<br><br>v.<br><br>JEFF J. HORN and THE HORN LAW GROUP,<br>LLC,<br><br>   Defendants. | Civil Action No. 19-5604 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

*Pro se* plaintiff Barry Cohen ("Plaintiff" or "Cohen") brings legal malpractice related claims against his former attorney, Defendants Jeff J. Horn, Esq., and the Jeff Horn Law Group, LLC (collectively, "Defendants"), as a result of their alleged negligent representation in connection with Plaintiff's attempt to challenge his late father's will. On January 6, 2021, this Court granted summary judgment in favor of Defendants, dismissing Plaintiff's claims. (ECF No. 26 ("Prior Opinion")). In *Cohen v. Horn*, 21-1223, 2021 WL 2935029, at \*1 (3d Cir. July 13, 2021), the Third Circuit affirmed in part and reversed in part the Court's decision. The Third Circuit upheld the Court's dismissal of Plaintiff's legal malpractice claim, but it remanded the case for this Court to "consider whether Cohen presents any other actionable tort or contract claim in his complaint" based upon the Complaint having asserted, in addition to the claim of legal malpractice, allegations of breach of fiduciary duty, breach of contract, failure to supervise, and negligence. The Third Circuit also instructed this Court to address whether Plaintiff may recover the legal fees he paid to Defendants, *i.e.*, damages that could be recoverable in a legal malpractice action independent of the analysis of the "suit within a suit."

Presently before the Court, are cross motions for summary judgment filed by Plaintiff and Defendants pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Underlying Estate Action

The following facts are undisputed unless otherwise noted. On October 27, 1999, Plaintiff's father, Harry Cohen, executed a last will and testament (the "1999 Will"), which had been drafted by Robert H. Taff, Esq. ECF No. 38-1, Def SOMF ¶¶1-2. The 1999 Will provided that upon Harry Cohen's death, any funds remaining after the payment of his debts and funeral expenses and other reductions, should be placed in a trust for his wife, Selma Cohen. *Id.* at ¶4; ECF No. 21, Pl. Resp. SOMF to Defendants' First Motion for Summary Judgment ("Pl. Resp. SOMF") ¶4; *see also* Certification of Jeffrey Leonard, Esq. ("Leonard Cert.") Ex. D, 1999 Will. The 1999 Will also instructed that Plaintiff and his sister, Helane, were to be named co-trustees of the trust, and upon Selma's death, they were to receive $200,000. *See* Ex. D. If either Helane or Plaintiff predeceased their father, then their share of trust was to be distributed to their surviving children. *Id.* In 2011, Plaintiff's father passed away, and Plaintiff's mother, Selma, probated the 1999 Will. Def SOMF ¶¶27-28.

In 2016, several years following his father's death, Plaintiff contacted Mr. Taff and informed him that he had only just received a copy of his father's probated will, and that he did not believe his mother was complying with the document's terms. Leonard Cert, Ex. K. Mr. Taff responded and informed Plaintiff that he "was not involved in the Administration of [Plaintiff's] Father's Estate" and "was not the attorney who submitted the Will to [c]ourt." Leonard Cert., Ex. L. Mr. Taff further reported that based on his "cursory investigation," it appeared that Plaintiff's

mother, Selma, herself may have submitted the will to probate. *Id.* In May 2016, Plaintiff retained Mr. Horn and his law firm to represent him in a lawsuit regarding the administration of his father's Estate. Def. SOMF ¶37; Pl. SOMF ¶40. In June 2016, Mr. Horn filed an order to show cause and complaint in New Jersey state court, alleging, *inter alia*, that Selma Cohen failed to abide by the terms of the 1999 Will and also failed to appropriately account for the Estate's assets. Def. SOMF ¶¶38-41. In response, Selma's counsel informed Plaintiff and Mr. Horn that Plaintiff's father executed a new will in 2009 (the "2009 Will"), which left everything solely to Selma, and accordingly, counsel requested that Plaintiff withdraw his complaint. *Id.* at ¶¶44-45. Plaintiff declined to do so, and Selma's counsel filed an answer and counterclaim seeking to probate the allegedly newly discovered 2009 Will. *Id.* at ¶46. Mr. Horn filed a response to the counterclaim, and included a certification from Plaintiff, which asserted, *inter alia*, that Plaintiff's father "suffered significant age-related mental issues, including interactions with the police and an open Adult Protective Services file" at the time the 2009 Will was executed, and thus, sought to challenge the 2009 Will based on lack of testamentary capacity. *Id.* at ¶¶47-48; Leonard Cert, Ex. R.

As found in the Prior Opinion, the parties largely disagree regarding the proposed legal strategy from that point onward. According to Mr. Horn, "the game plan" for the litigation was to "file an answer to the counterclaim, create . . . the impression that Plaintiff was willing to 'go the distance' and then settle the matter . . . and collect the maximum amount of reimbursement to Plaintiff." Def. SOMF ¶¶51-52. Indeed, on August 29, 2016, Mr. Horn sent a letter to Plaintiff and his wife purporting to "[c]onfirm[] our game plan," which reads:

1. Answer Counterclaim and respond to certification as set forth in Selma's pleadings.
2. Communicate with counsel for Selma to determine the depth of her knowledge about the circumstances of Harry's interaction with Adult

Protective Services, Selma's interaction with the Manchester Police and Harry's capacity to execute an updated Will, leave counsel with the impression you are willing to go the distance.

3. Settle matter conceding the admission of the January 2, 2009 Will superseding the 1999 Will and collecting maximum reimbursement for your legal fees expended to date.

4. You have expended $3,500 thus far. I budget the Answer to counterclaim and these negotiations without conducting any discovery or appearing in Court to around $15000. This is of course an estimate[.]

Leonard Cert., Ex. R. However, Plaintiff – without citing to any corroborating evidence -- disputes Defendants' characterization of the litigation strategy and contends that "[t]he game plan was to subpoena the Ocean County Senior Services file . . . to contest the validity of the 2009 Will, to obtain the financial records at the time of [his] father's death, and then to re-evaluate the position." Pl. Resp. SOMF ¶59.

Discovery produced during the underlying estate litigation, revealed that on November 1, 2007, Mr. Taff, the attorney who prepared the 1999 Will, drafted a memo (the "Taff Memo") to his file, purportedly documenting a meeting with Harry and Selma Cohen on October 31, 2007. Def. SOMF ¶69; *see also* Leonard Cert, Ex E. According to the Taff Memo, Plaintiff's parents were concerned that their son was "very distant, both geographically and emotionally from them," and Mr. Taff advised reconsidering their choice in trustee. Leonard Cert, Ex E. According to the memo, the Cohens indicated that they would follow up with Mr. Taff "in about a week." *Id.* Ultimately, however, it appears that Mr. Taff did not draft new wills or any documents for Harry and Selma, and the alleged 2009 Will was drafted by a different attorney.

Discovery also revealed the existence of a document, dated November 13, 2008, titled the "New Jersey Ease Comprehensive Assessment Tool" ("the Comprehensive Assessment"), which was included in Ocean County Senior Services' file, that revealed that Harry Cohen reportedly suffered from dementia. *See* ECF No. 19-1, Leonard Supp. Cert., Ex. 1.

4

In September 2016, the state court judge in the estate dispute issued a case management order, which set various discovery deadlines between October 2016 and March 2017. Def. SOMF ¶53. Among other things, the order set a December 15, 2016 deadline for fact discovery depositions. *Id.* A few weeks later, Mr. Horn spoke to Plaintiff and his wife, and Plaintiff directed Mr. Horn to obtain an accounting of his father's estate. Def. SOMF ¶¶54-55. Plaintiff and Mr. Horn also agreed that Mr. Horn would issue a subpoena to Adult Protective Social Services in order to obtain information which would support the assertion that Plaintiff's father lacked testamentary capacity at the time the 2009 Will was allegedly executed. *Id.* ¶56. On December 2, 2016, Mr. Horn issued a subpoena to Virginia Muscarella from Senior Services of Manchester Township, which, on December 23, 2016, Selma's counsel moved to quash. *Id.* at ¶¶57, 59. On December 29, 2016, Mr. Horn wrote to Plaintiff informing him, *inter alia*, that the anticipated budget to oppose the motion to quash would be between $1,000 and $2,000, and asking Plaintiff to confirm he wanted to proceed with the opposition. Leonard Cert., Ex. W. Mr. Horn also informed Plaintiff that, at that point, "$6,500 ha[d] been billed and paid" and "[a]ssuming continued resistance from Selma's side of the litigation, the prospect of the matter costing an additional $5,000 to $10,000 before [t]rial exits." *Id.* Mr. Horn also expressed doubt "that pressing on with the litigation will produce a financial recovery that justifies the expenditure," and requested Plaintiff's insight. *Id.*

On January 9, 2017, Mr. Horn sent another letter to Plaintiff asserting that, "[i]t is extremely clear to me that we are not on the same page as it relates to this litigation. By way of example and not limitation, your focus on ordering me to go [to] the [c]ourthouse to inspect the Court's file to confirm that the 2009 Will is an original and conducting parallel discovery is incongruent with the attorney-client relationship." Leonard Cert, Ex. X. Further, Mr. Horn

enclosed a copy of the September 7, 2016 case management order and requested that Plaintiff execute a substitution of attorney form. *Id.* The letter further indicated that if Plaintiff did not execute the form, then Mr. Horn would file a motion to be relieved as counsel. *Id.* In this litigation, Plaintiff disputes "the intent of the correspondence" and asserts that the letter was sent after a telephone conversation during which Mr. Horn admitted that 1) he "had not verified the authenticity of the 2009 Will despite having agreed to"; 2) Mr. Horn unilaterally agreed, without Plaintiff's knowledge or consent, to allow the defendants additional time to respond to outstanding discovery requests and reschedule Ms. Muscarela's deposition; 3) Mr. Horn did not intend to respond to the motion to quash and had no intention of filing a motion to extend the discovery deadlines outlined in the case management order. Pl. SOMF. ¶69. However, it is unclear how, if at all, Plaintiff responded to Mr. Horn's letter in 2017. On January 17, 2017, Mr. Horn filed a motion seeking to withdraw as counsel, which was granted on February 6, 2017. Def. SOMF ¶¶65, 67.

Several months after Mr. Horn was relieved as counsel, on May 4, 2017, the state court judge entered an order finding that "decedent Harry Cohen specifically intended to revoke [the 1999 Will]." Leonard Cert., Ex. BB. Accordingly, the court vacated the order probating the 1999 will, admitted the 2009 Will to probate, and granted Selma's attorney an award of attorney's fees to be paid from the decedent's estate. *Id.*

### B. The Malpractice Action

On January 29, 2019, Plaintiff filed a legal malpractice action against Defendants in New Jersey state court. Defendants subsequently removed the matter to this Court, based on the existence of diversity jurisdiction.

On January 6, 2021, the Court entered summary judgment in favor of Defendants on Plaintiff's legal malpractice claim. At no point during the parties' briefing did Plaintiff suggest the existence of any other claims in the operative Complaint.

However, on July 13, 2021, the Third Circuit affirmed in part and reversed, in part, my prior decision. Specifically, while the Third Circuit upheld the Court's dismissal of Plaintiff's legal malpractice claims, it found that the Court erred in concluding that Defendants' sole argument in their motion for summary judgment resolved the entire case. *Cohen*, 21-1223, 2021 WL 2935029, at *3. The Third Circuit reasoned that in his complaint, Cohen also sought a recovery of the legal fees he paid to the defendants, damages that could be recoverable in a legal malpractice action independent of the analysis of the "suit within a suit." *Id.* Also, the appellate panel instructed that in addition to considering whether Cohen could recover the legal fees under a malpractice theory, this Court should consider whether Cohen presents any other actionable tort or contract claim in his complaint, including breach of contract, breach of fiduciary duty, negligence, and failure to supervise claims. *Id.*

After remand, Plaintiff and Defendants filed the instant motions for summary judgment. (ECF Nos. 38 and 39).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable [factfinder] could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty.*

*of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.

*Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.   DISCUSSION

I note that the record on these motions for summary judgment is the same as the record considered in connection with Defendants' first motion for summary judgment, which gave rise to the Court's Prior Opinion. The Third Circuit did not instruct the parties to engage in further discovery, nor did the parties request or conduct any additional discovery following remand.[1] Because the Third Circuit remanded the case to this Court with the specific instruction to consider the merits of certain additional claims, I will assume the following claims exist, even though they were not properly pled, in Plaintiff's Complaint: (1) breach of fiduciary duty, (2) breach of contract, (3) negligence, and (4) negligent supervision.

A.   Entitlement to the Recovery of Legal Fees

At the outset, I consider the Third Circuit's remand regarding Plaintiff's entitlement to the recovery of the legal fees paid to Defendants in connection with his legal malpractice claim. The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the

---

[1]    Plaintiff's Statement of Undisputed Material Facts submitted in connection with the instant motion consists of only three numerated paragraphs, attaching documents previously reviewed by the Court on Defendants' first motion for summary judgment, including Plaintiff's complaint and discovery responses exchanged as part of the underlying estate litigation. (*See* ECF No. 39-2.)

9

defendant, and (3) proximate causation of the damages claimed by the plaintiff. *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416, 678 A.2d 1060 (1996). In the Prior Opinion, the Court dismissed Plaintiff's legal malpractice claim based on his failure to show proximate causation, relying exclusively on the "suit within a suit" test. On appeal, however, the Third Circuit found that this Court erred in concluding that Defendants' "sole argument in their motion for summary judgment resolved the entire case." *Cohen*, 21-1223, 2021 WL 2935029, at *3. In this regard, the Third Circuit explained only that Plaintiff also sought recovery of the legal fees he paid to Defendants, which are "damages that could be recoverable in a legal malpractice action independent of the analysis of the 'suit within a suit.'" *Id.* (citing *Saffer v. Willoughby*, 143 N.J. 256, 670 A.2d 527, 534 (1996) ("Ordinarily, an attorney may not collect attorney fees for services negligently performed.")).[2] Without further explanation, the Third Circuit thus asked this Court to decide this issue. Although the Third Circuit's directive is vague, I believe that it intended to highlight that while the most common way to prove the harm inflicted by legal malpractice is the "suit within a suit" approach to establishing proximate causation, which this Court previously addressed, it is not the only method. *See Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179

---

[2]    *Saffer* involved a fee dispute between an attorney and his former client, who filed a legal malpractice action against the former attorney. 143 N.J. at 260. One of the issues in *Saffer* was the effect a finding of malpractice should have on the fee dispute and on the former client's damages. As referenced by the Third Circuit on appeal in this case, the New Jersey Supreme Court held that "[o]rdinarily, an attorney may not collect attorney fees for services negligently performed." The Supreme Court also held that "a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action." *Id.* at 272. The *Saffer* Court reasoned that a client " 'may recover for losses which are proximately caused by the attorney's negligence or malpractice,' " and that "[t]he purpose of a legal malpractice claim is 'to put a plaintiff in as good a position as he [or she] would have been had the [attorney] kept his [or her] contract.' " *Id.* at 271 (quoting *Lieberman v. Emp'rs Ins. of Wausau*, 84 N.J. 325, 341 (1980)). Accordingly, the *Saffer* Court concluded that it is appropriate to award attorneys' fees to a prevailing plaintiff in an attorney malpractice action because such fees are "consequential damages that are proximately related to the malpractice." *Id.* at 272. Put simply, *Saffer*, merely stands for the proposition that "a client may recover reasonable expenses and attorneys' fees as consequential damages for attorney malpractice." *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 432 (2001).

N.J. 343, 359 (2004); *see also Carbis Sales, Inc. v. Eisenberg*, 397 N.J. Super. 64, 85–86 (App. Div. 2007) (explaining that "depending on the circumstances, a legal malpractice case may proceed in other ways, including a modified 'suit within a suit' or a suit employing expert testimony as to what, as a matter of reasonable probability, would have transpired at the original trial."). That said, the Third Circuit also emphasized the Prior Opinion's statement that it appeared Plaintiff failed to adequately show that Defendants breached a duty to him. Because Defendants did not move for summary judgment on that basis in their original motion, however, I did not make an express finding as to this element of Plaintiff's legal malpractice claim. (Prior Opinion, 9 at n.3.) The Third Circuit commented that its ruling did not preclude Defendants from making arguments related to Plaintiff's failure to prove breach of the duty of care on remand. Accordingly, because the Court finds in this Opinion that Plaintiff has not demonstrated Defendants' breach of the duty of care, which is a required element of his legal malpractice claim, it need not address the alternative theories of proximate causation.

Upon second review, I expressly find that Plaintiff has not shown that Defendants breached a duty to him, and therefore, he is not entitled to recovery of the legal fees paid under a legal malpractice theory. Plaintiff asserts that Defendants breached their duties to him by failing to 1) honor the dates in the scheduling order; 2) file a motion to compel discovery; 3) file a motion to extend the discovery deadlines; 3) assess the authenticity of the 2009 Will; 4) respond to the motion to quash; and 5) subpoena records from Ocean County Senior Services. (ECF No. 18, Pl. Opp. Br. at 4.) Plaintiff further contends that if "Defendants had obtained the Ocean County Senior Services file as promised, it would have revealed that the [d]ecedent was diagnosed with dementia prior to execution of the 2009 Will, that [the decedent's] mental condition had been deteriorating since 2008." *Id*. at 6. Similarly, Plaintiff argues that if Defendants had "examined the 2009 Will or

further questioned its author, the authenticity would have been questioned and it would not have been entered." *Id*.

"Generally speaking, a lawyer is required to exercise that 'degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.' " *Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo*, 345 N.J. Super. 1, 12 (App. Div. 2001) (quoting *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 88 N.J. 571, 588 (1982)), *abrogated in part by Segal v. Lynch*, 211 N.J. 230, 261–64 (2012). A competent attorney represents that he or she "has the degree of knowledge and skill ordinarily possessed and used by others engaged in the general practice of law.... [which] must be judged by the standard legal practice at the time the attorney represented the client." *Cottone v. Fox Rothschild, LLP*, A-0420-12T4, 2014 WL 4287002, at *10 (N.J. Super. Ct. App. Div. Sept. 2, 2014) (citing Model Jury Charge (Civil), 5.51A, "Legal Malpractice" (1979)). Moreover, the duty to exercise reasonable care will vary, depending upon the circumstances of the specific case, *Ziegelheim v. Apollo*, 128 N.J. 250, 260 (1992), and must be considered "with reference to the type of service the attorney undertakes to perform." *St. Pius X House of Retreats*, 88 N.J. at 588. The steps necessary to a proper handling of the representation "will include, among other things, a careful investigation of the facts of the matter, the formulation of a legal strategy, the filing of appropriate papers, and the maintenance of communication with the client." *Ziegelheim*, 128 N.J. at 261.

That said, attorneys are not "guarantors of a successful outcome, nor are they answerable for every 'error of judgment in the conduct of a case or for every mistake which may occur in practice.'" *Cottone*, A-0420-12T4, 2014 WL 4287002, at *10 (quoting *2175 Lemoine Ave. v. Finco, Inc.*, 272 N.J. Super. 478, 486 (App. Div.), *certif. denied*, 137 N.J. 311 (1994)). Indeed,

courts have defined the standard of care imposed on attorneys "in rather broad terms," since an attorney's responsibilities in any given representation will "vary with the circumstances presented." *Ziegelheim*, 128 N.J. at 260; *see also St. Pius X*, 88 N.J. at 588 ("What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform."); *Conklin*, 145 N.J. at 413 ("Malpractice in furnishing legal advice is a function of the specific situation and the known predilections of the client.").

Specifically, as it pertains to Plaintiff's allegations that Defendants failed to honor certain Court imposed deadlines and failed to respond to and file certain motions, I note that in order to satisfy his or her obligation to a client, among other things, an "attorney must act with 'reasonable diligence and promptness,' and with a degree of skill and competence that comports with reasonable professional standards." *Estate of Spencer v. Gavin*, 946 A.2d 1051, 1064 (N.J. App. Div. 2008) (quoting New Jersey R. Professional Conduct 1.3). In the Prior Opinion, I noted that with respect to Mr. Horn's alleged failure to oppose the motion to quash, on December 29, 2016, six days after the motion was filed, Mr. Horn emailed Plaintiff to inform him, *inter alia*, that the anticipated budget to oppose the motion to quash would be between $1000 and $2000 and to confirm whether Plaintiff wanted Mr. Horn to proceed with the opposition.[3] Def. SOMF ¶ 60; *see also* Leonard Cert., Ex. W. I also emphasized that Plaintiff had not proffered any evidence which suggests that Plaintiff responded and requested that Mr. Horn oppose the motion. That statement remains true on the instant motions, because, as to this issue, Plaintiff has failed to supplement the record in any meaningful way.  As such, the record lacks any evidence regarding Plaintiff and Mr. Horn's communications between December 29, 2016 and January 9, 2017, when Mr. Horn sought

---

[3]   Although Plaintiff has previously claimed that Mr. Horn "did not forward the actual [motion papers] until January 7, 2017," he has provided no proof of this fact. Moreover, even if true, the failure to forward to the motion to quash to Plaintiff does not, alone, constitute a breach of Defendants' duties to Plaintiff.

to terminate the attorney-client relationship. Further, on January 27, 2017, Mr. Horn informed Plaintiff, via email, that the court had scheduled both the motion to be relieved as counsel and the motion to quash for February 6, 2017, and that if Plaintiff did not hire new counsel or file a *pro se* response, the motions would be unopposed. Def. SOMF ¶ 66; *see also* Leonard Cert., Ex. Z. Accordingly, I find that Plaintiff has not satisfied his burden of demonstrating that Mr. Horn breached a legal obligation regarding the motion to quash.

Similarly, although Plaintiff asserts that Mr. Horn failed to diligently pursue discovery by unliterally agreeing to postpone the Virginia Muscarella deposition from December 15, 2016 to December 26, 2016, a date after the deadline for depositions pursuant to the court's scheduling order, Mr. Horn did not breach a duty to his client in that regard, either. In light of the pending motion to quash, the deposition was unable to proceed on the date for which it had been noticed, and thus, Mr. Horn was plainly obliged to postpone.

With respect to the remainder of Plaintiff's assertions, the record indicates that several months into the attorney-client relationship, Plaintiff and Mr. Horn disagreed regarding the legal strategy for the remainder of the litigation. Specifically, it is undisputed that in January 2017, Mr. Horn sent a letter to Plaintiff stating: "[i]t is extremely clear to me that we are not on the same page as it relates to this litigation. By way of example and not limitation, your focus on ordering me to go [to] the [c]ourthouse to inspect the Court's file to confirm that the 2009 Will is an original and conducting parallel discovery is incongruent with the attorney-client relationship." Leonard Cert, Ex. X.

Thereafter, once it was clear that Plaintiff and Mr. Horn could not agree on a litigation strategy, Mr. Horn provided Plaintiff sufficient time to retain a new attorney and file a notice of substitution. Def. SOMF ¶¶ 61-64; Leonard Cert, Ex. X. Although Plaintiff disputes "the intent of

14

the correspondence," asserting that the letter was sent after a telephone conversation during which Mr. Horn admitted to various shortcomings in his performance as Plaintiff's attorney, this self-serving allegation has not been substantiated by the record. Further, when Plaintiff failed to retain new counsel, Mr. Horn filed a motion to withdraw his representation on January 17, 2017, consistent with his obligations under the rules of professional conduct. Here, I turn to R.P.C. 1.16, captioned "Declining or Terminating Representation." That rule provides that where the conduct of the client does not justify the attorney's withdrawal, the attorney "may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client...." R.P.C. 1:16(b). Paragraph (d) of the rule further requires that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests...." The issue then, is whether in the totality of the circumstances, Mr. Horn's withdrawal, considering both the manner in which it was done and its timing, was accomplished without "material adverse effect" on Plaintiff's interests in that it was attended by those steps "reasonably practicable" to protect his interests. Importantly, here, the day after Mr. Horn filed his motion to withdraw as counsel, he provided Plaintiff with a copy of his file, notified Plaintiff that the motion to relieve and the motions to quash were all scheduled for February 6, 2017, and informed Plaintiff that he had three options as to how to proceed: 1) sign the substitution of attorney, takeover representation and file the responsive pleadings, 2) have superseding counsel sign a substitution of attorney, or 3) do nothing and allow the motions to proceed unopposed. Leonard Cert., Ex. Z. Finally, Mr. Horn informed Plaintiff that responsive pleadings are typically due a minimum of eight days prior to the motion hearing and must be delivered to the court and all parties. *Id.* The court relieved Mr. Horn from his representation of Plaintiff on February 6, 2016. Def. SOMF ¶¶ 67. Thus, to the extent Plaintiff argues that Mr. Horn's withdrawal constituted a

breach of the standard duty of care, I find no evidence in the record to support the conclusion that Defendants violated any obligations imposed by the rules of professional responsibility or any other attorney-client duties.[4]

Accordingly, based on my finding that Plaintiff has not demonstrated Defendants' breach of the duty of care, he is not entitled to recovery of the legal fees paid to Defendants under a legal malpractice theory.

      B.    <u>Breach of Fiduciary Duty and Breach of Contract</u>

Next, I turn to Plaintiff's potential claims for breach of contract and breach of fiduciary duty. With respect to these claims, Defendants argue that they should be dismissed because they are duplicative of Plaintiff's legal malpractice claim, which this Court previously dismissed, and the Third Circuit affirmed. According to Defendants, to the extent that the Complaint could be construed to assert these two additional claims, they are based on the same allegedly negligent acts relied on to support Plaintiff's unsuccessful legal malpractice claim. Additionally, should the Court find that these claims are not duplicative, Defendants also argue that they should be dismissed because Plaintiff cannot prove the elements required to sustain either claim. In response, Plaintiff acknowledges that "[t]here is no doubt that standard practice in New Jersey is to dismiss claims of this nature if they are duplicative of a legal malpractice claim." However, he argues, without legal basis, that regardless of this practice, attorneys should be held to a "higher standard[]."

---

[4]      Notably, Plaintiff has provided no expert testimony with respect to Defendants' alleged breach of the standard of care. Cottone, A-0420-12, 2014 WL 4287002, at *12. ("[I]n most legal malpractice cases, the testimony of an expert is necessary to supply the standard of care against which the lawyer's conduct is to be evaluated."); *see also Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 14 (App. Div.) ("Because the duties a lawyer owes to his client are not known by the average juror, a plaintiff will usually have to present expert testimony defining the duty and explaining the breach."), *certif. denied*, 188 N.J. 489 (2006). Indeed, "[i]t is only in rare cases that expert testimony is not required in legal malpractice actions." *Cole, Schotz, Meisel, Forman & Leonard, P.A. v. Kleiman*, A-6519-06, 2008 WL 2744371, at *2 (N.J. Super. Ct. App. Div. July 16, 2008).

16

Defendants are correct that Plaintiff's breach of contract and breach of fiduciary duty claims are duplicative of his legal malpractice claim. "'[I]n the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct,' and the claims must be based on distinct conduct." *O'Keefe v. Friedman & Friedman, Ltd.*, 16-866, 2018 WL 1535234, at *6 (D.N.J. Mar. 29, 2018) (denying a plaintiff's motion to amend to add a breach of contract claim because that claim would be duplicative of the previously asserted legal malpractice claim) (quoting *RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, 2009 WL 2580354, at *7, 2009 U.S. Dist. LEXIS 73359, at *24–25 (D.N.J. Aug. 19, 2009)); *see also Lopez–Siguenza v. Roddy*, No. 13-2005, 2014 WL 4854452, at *7 (D.N.J. Sept. 30, 2014) ("To permit a generalized claim for breach of contract to proceed, when the breach is apparently based solely upon the attorney's malpractice, would ... be duplicative of the malpractice claim."). Indeed, the same concept applies for claims of breach of fiduciary duty. *See CCC Atl., LLC v. Silverang*, No. 18-17433, 2019 WL 3334797, at *5 (D.N.J. July 25, 2019) (dismissing a breach of fiduciary duty claim where the plaintiff simply "list[ed] the same conduct for this claim as it did for its legal malpractice claim"); *Lopez-Siguenza*, No. 13-2005, 2014 WL 4854452, at *6 (finding breach of fiduciary duty claim against attorney duplicative of legal malpractice claim where plaintiff "failed to plead misconduct by [defendant] as a fiduciary beyond the negligent acts encompassed in [p]laintiff's legal malpractice claim").

In this regard, I find *Fink v. Kirchner*, No. 12-4125, 2013 WL 1952303, at *3 (D.N.J. May 8, 2013) instructive. There, the court considered whether a plaintiff's fraud and breach of fiduciary duty claims were duplicative of his legal malpractice claim. The court explained that "'[l]egal-malpractice suits are grounded in the tort of negligence,' and at 'the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance.'" *Id.* (quoting

17

*McGrogan v. Till*, 167 N.J. 414, 425 (2001)). In contrast, "claims that a lawyer committed fraud or knowingly violated a fiduciary duty are intentional torts, separate from allegations concerning the lawyer's negligent deviation from the professional standard of care." *Id.* (citations omitted). Thus, "even though some allegations may overlap, if the facts to support claims of fraud and breach of fiduciary duty are pleaded properly, they may state separate, non-duplicative claims from a legal malpractice claim." *Id.* (citing *Packard–Bamberger & Co., Inc. v. Collier*, 167 N.J. 427, 443 (2001)) ("Stated plainly, an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care."). Applying this reasoning, the court found that the plaintiff "lodged extensive and detailed allegations against his attorney-defendant and the defendant law firm, including some allegations concerning the attorney-defendant's deviation from the professional standard of care and some allegations relating to the attorney-defendant's and the law firm's purported intentional conduct to defraud the plaintiff. For example, on one hand, the plaintiff alleged that the defendants "failed to take certain depositions, fruitlessly pursued sanctions […], did legal work not approved by [the plaintiff], provided poor legal advice […], and submitted an altered document," while on the other hand, the plaintiff alleged that because he still owed over $150,000 in legal fees and costs, the defendants had "considerable financial incentive" to continue the litigation. In addition, the plaintiff alleged that the attorney-defendant attempted to extort money from the plaintiff by threatening not to testify in a subpoenaed deposition in a separate matter between the plaintiff and another law firm. Based on these allegations, the court found that the plaintiff had pleaded separate claims for legal malpractice, fraud, and breach of fiduciary duty, allowing all three types of claims to proceed.

The instant case, however, which does not contain any allegations of conduct separate and distinct from the conduct underlying Plaintiff's dismissed malpractice claim, shares little

similarities with *Fink*. Indeed, with respect to any breach of contract claim that could be construed from the Complaint, the only contract alleged is the agreement between Plaintiff and Defendants for legal services, and, more importantly, the only allegations that Defendants breached that agreement concern their supposed departure from the professional standard of care. To this end, Plaintiff alleges that Defendants breached their agreement to provide legal services by, *inter alia*, not deposing witnesses or issuing subpoenas for the production of certain records, consenting to the deposition of a witness after the discovery end date, failing to respond to a motion to quash, and not responding to pending motions while the attorney of record. As set forth in the Court's Prior Opinion, these are the identical allegations that formed the basis for Plaintiff's failed legal malpractice claim, and therefore, any breach of contract claim would be duplicative. Moreover, Plaintiff's breach of fiduciary duty claim fails for the same reasons. Again, unlike *Fink*, the Complaint does not contain any allegations that Defendants intentionally breached their fiduciary duty to Plaintiff—other than their purported negligent deviation from the standard of care. In that regard, this case is more akin to *Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F.App'x 102, 111 (3d Cir. 2011), in which the Third Circuit concluded:

> [The plaintiff's] breach of fiduciary duty claim was also properly dismissed as redundant to the professional negligence claim. The breach of fiduciary duty count alleged that "Jenkens . . . failed to carry out its obligations because a New Jersey trial court and the appellate court concluded that the Proxy Statement was materially misleading" and that "[d]espite a direct request by BAG for guidance, Jenkens failed to instruct BAG as to the legally required standard of value in New Jersey." (J.A. 66.) We agree with the District Court that these allegations fail to articulate the breach of any duty "separate and distinct" from the duty of care.

Tellingly, Plaintiff makes no argument that his breach of contract and breach of fiduciary duty claims are separate and distinct from his dismissed legal malpractice claim. Rather, as stated above, he merely argues that although duplicative claims are generally dismissed, these claims should survive because attorneys should be held to a higher standard than a "lay person." This argument,

however, is not supported by case law, and therefore, Plaintiff's breach of fiduciary duty and breach of contract claims are dismissed with prejudice.

    C.   <u>Negligence</u>

    Defendants also argue that to the extent a negligence claim could be construed from the allegations of the Complaint, it is barred by the law of the case doctrine. Defendants explain that this Court has already determined that Plaintiff cannot sustain a cause of action against him for legal malpractice, finding in its Prior Opinion that Plaintiff could not "establish a *prima facie* case with respect to any of the remaining elements of a legal malpractice claim." Thus, because a legal malpractice claim is simply a "negligence claim against a lawyer," Defendants maintain the negligence claim cannot proceed. I agree with Defendants' position.

    To prove a claim of negligence, a plaintiff must demonstrate: (1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (citing *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008)); *see also Weinberg v. Dinger*, 106 N.J. 469, 484 (1987) (citing W. Keeton et al., Prosser & Keeton on the Law of Torts § 30 at 164-65 (5th ed. 1984)). A plaintiff bears the burden of proving negligence, *see Reichert v. Vegholm*, 366 N.J. Super. 209, 213 (App. Div. 2004), and must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries, *Underhill v. Borough of Caldwell*, 463 N.J. Super. 548, 554 (App Div. 2020) (citing *Camp v. Jiffy Lube No. 114*, 309 N.J. Super. 305, 309-11 (App. Div. 1998)). Similarly, in New Jersey, the following elements are necessary to establish legal malpractice: "(1) the existence of an attorney-client relationship giving rise to a duty of care; (2) breach of that duty by the attorney; (3) that the breach was the proximate cause of any damages sustained; and (4) actual damages." *Wills, O'Neill & Mellk v. Rothman*, No. 10-3078, 2012 U.S. Dist. LEXIS 68370, at *17-18 (D. N.J. May 16, 2012) (citing *McGrogan v.*

*Till*, 167 N.J. 414, 424-25 (2001)). Thus, Defendants are correct that "[l]egal malpractice is negligence relating to an attorney's representation of a client." *Sommers v. McKinney*, 287 N.J. Super. 1, 9 (App. Div. 1996).

In the Prior Opinion, I determined that Plaintiff could not demonstrate causation or damages. Specifically, I explained that Mr. Horn was relieved as counsel in February 2017, but that the state court did not dispose of the underlying action until May 2017. And, at the time of Mr. Horn's withdrawal, he outlined the outstanding motions, made Plaintiff aware that responses to those motions had not yet been filed, and informed Plaintiff that the discovery Plaintiff desired had not been sought. Based on these findings, I concluded that Plaintiff had "ample time to retain new counsel to pursue discovery and file the responsive briefings or file them *pro se*," and more importantly, Plaintiff had "not demonstrated that even if Mr. Horn had performed the requested actions, the underlying lawsuit would have resulted in a favorable recovery for Plaintiff." Indeed, I found that "[a]t this phase of the litigation, the only admissible evidence which casts doubt on Harry Cohen's testamentary capacity is Plaintiff's own assertion that his father's mental state was failing," which was "insufficient to establish that Plaintiff could have succeeded in the underlying estate matter." Moreover, for the reasons set forth above, *supra*, I determined that Plaintiff has also provided no evidence that Defendants breached their duty of care to Plaintiff.

Because I find that any additional negligence claim which might be gleaned from the Complaint would be based on the same allegations and conduct as Plaintiff's legal malpractice claim, Plaintiff's negligence claim fails for the same reasons as identified in the Court's Prior Opinion. Stated differently, the Complaint contains no allegations that Defendants acted negligently outside the scope of their professional relationship with Plaintiff. Indeed, the Court's findings on legal malpractice were upheld by the Third Circuit on Plaintiff's appeal, and as noted

above, the record on these motions remains the exact same. On this second attempt, Plaintiff has

not provided any additional evidence to demonstrate the negligence elements identified herein.

Revealingly, Plaintiff's motion for summary judgment argues that Mr. Horn "did not protect

Plaintiff's best interests, did not act with any diligence or promptness, and did not act with a degree

of skill and competence that meets reasonable professional standards." In this regard, Plaintiff's

motion for summary judgment is nothing more than a rehash of this Court's prior dismissal of the

legal malpractice claim, which was affirmed on appeal, and therefore, Defendants are entitled to

summary judgment dismissing Plaintiff's negligence claim.

     D.    <u>Negligent Supervision</u>

Finally, Defendants move for summary judgment on Plaintiff's negligent supervision

claim, arguing that no facts exist in the record to support such a claim. Despite the Third Circuit's

mandate, directing the Court and the parties to consider the record in connection with a potential

negligent supervision claim, neither Plaintiff's moving papers nor opposition to Defendants'

motion for summary judgment contains any legal argument, case law, or response to Defendants'

arguments regarding this claim.[5]

Nonetheless, considering the substantive merits of the claim, summary judgment in

Defendants' favor is warranted. To prove a *prima facie* case of negligent supervision, Plaintiff

must show: (1) that the employer "knew or had reason to know of the particular unfitness,

incompetence, or dangerous attributes of [the employees] who were involved," (2) "could

reasonably have foreseen that such qualities created a risk of harm to other persons," and (3) the

---

[5]    However, "a district court cannot provide by local rule that a motion for summary judgment will be automatically granted when the opposing party fails to respond." *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Rather, where the moving party does not have the burden of proof on the relevant issues, the district court "must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.*

employer's negligence "proximately caused plaintiff['s] injuries." *Smith v. Harrah's Casino Resort of Atlantic City*, 2013 WL 6508406 at *3 (N.J. App. Div. Dec. 13, 2013); *see also Di Cosala v. Kay*, 91 N.J. 159, 173–74 (1982).

Here, the Complaint's solitary allegation giving rise to a purported negligent supervision claim states that Defendants were negligent in their duties to Plaintiff by "failing to properly supervise a non-licensed legal professional," *i.e.*, Mr. Horn's legal assistant Maryanne Taft, who, when questioned about why Plaintiff's discovery responses were not timely filed, wrongly believed that they were not due for another thirty days. (Compl., ¶17.) Despite this allegation, however, no evidence exists in the record to show that Mr. Horn knew or had reason to know of the "particular unfitness, incompetence or dangerous attributes" of Ms. Taft. Indeed, as Defendants argue, Plaintiff did not secure Ms. Taft's deposition, request her employment file, or elicit any evidence related to her whatsoever. Moreover, given this Court's ruling regarding Plaintiff's legal malpractice claim, Plaintiff has failed to show how Ms. Taft's confusion regarding the deadline for discovery responses in the underlying matter caused him any harm. To that end, the dismissal of Plaintiff's complaint in the underlying action had nothing to do with his failure to provide timely responses to discovery requests. Rather, the underlying complaint was dismissed based on the state court judge's finding that "decedent Harry Cohen specifically intended to revoke [the 1999 Will]." Leonard Cert., Ex. CC. Accordingly, there can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Summary judgment is granted in Defendants' favor as to Plaintiff's negligent supervision claim.

IV.     **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants' motion is **GRANTED**, and Plaintiff's motion

is **DENIED**.


Dated: May 27, 2022                                      <u>/s/ Freda L. Wolfson</u>
                                                        Freda L. Wolfson
                                                        U.S. Chief District Judge